JAYNE HEADRICK
v.
JAMES HEADRICK.
No. 2006 CA 2292.
Court of Appeals of Louisiana, First Circuit.
September 14, 2007.
NOT DESIGNATED FOR PUBLICATION
HARRY P. PASTUSZEK, Jr., DAVID S. Pittman, Attorney for Plaintiff  Appellee Jayne Headrick Powers
ANTHONY L. GLORIOSO, Attorney for Defendant  Appellant James Headrick.
Before: CARTER, C.J., PETTIGREW, and WELCH, JJ.
WELCH, J.
James Headrick, who previously agreed in a consent judgment with Jayne Headrick (now Jayne Powers[1]) to pay child support until his children graduated From college and a percentage share of the costs of undergraduate college for his children, appeals a judgment in favor of Ms. Powers that ordered that the scholarship funds received by one of the children (Joshua) be credited against that child's total undergraduate college costs, with each party thereafter being responsible for their percentage share of the remaining costs. Finding no error in the judgment of the trial court, we affirm.

I. FACTUAL AND PROCEDURAL HISTORY
We borrow the factual and procedural history of this case from our earlier opinion, Headrick v. Headrick, XXXX-XXXX, pp. 2-4 (La. App. 1st Cir. 3/28/07) (unpublished):
Jayne and James Headrick were married in 1980. Three children were born of the marriage: Joshua, on September 8, 1984; Jill, on February 11, 1988; and Jacob, on July 5, 1990. Jayne Headrick (now Jayne Powers) filed a petition to divorce James Headrick in 1993, and was named the domiciliary parent of the children.
In December of 1996, the parties entered into a consent judgment, in which James Headrick agreed to pay child support to Ms. Powers in the amount of $1,500.00 per month "until the children graduate from college." Mr. Headrick further agreed in the consent judgment to "contribute proportionately to the children's educational needs."
Thereafter, on January 7, 2004, Mr. Headrick filed a rule for the reduction of his child support obligation, asserting: a change in circumstances in the parties' earnings, that one child had attained the age of 18, and that the provision in the consent judgment requiring his payment of child support "until the children graduate from college" was vague and ambiguous and should be deleted.
After a hearing on the matter and considering the stipulations of the parties, the trial court rendered judgment on July 26, 2004, ordering Mr. Headrick to pay monthly child support, for each child individually, as follows: Jacob, $935.00; Jill, $415.00; and Joshua, $325.00 (for a monthly total of $1,675.00). It was further ordered that the monthly child support payments for Joshua were "abated" for the months of January through and including August of 2004, but were to recommence on September 1, 2004 "and continue thereafter month to month for so long as he remains enrolled as a full time student in an undergraduate college program even though he has reached the age of majority." Mr. Headrick was also ordered to pay 70% of the children's uninsured medical and dental expenses and 70% of the children's undergraduate college costs (the obligation to pay these expenses was limited in duration, not to extend past June of 2010 for Joshua, and not to extend past five years commencing September 1st of the year Jill and/or Jacob graduate from high school, or whenever the children obtain their respective undergraduate degrees, whichever occurred first).
Another rule to reduce child support was filed by Mr. Headrick in February of 2005, asserting that Joshua Headrick was not a "fulltime student" for some part of 2004, and that thereafter, he moved from his mother's home, where he had previously resided while attending a local community college, to attend an out-of-town university, where he lived in a dormitory. Mr. Headrick contended that these circumstances warranted a reduction in his child support obligation for Joshua.
Following a hearing on June 22, 2005, the trial court ruled that Mr. Headrick was entitled to a credit in the amount of $1,137.50, to be applied against future child support obligations, for child support he paid for the benefit of the major child Joshua, when Joshua was not a full-time student as required by the applicable consent judgment. The trial court denied Mr. Headrick's request to reduce child support payable under the consent judgment for Joshua on account of Joshua's subsequent full-time enrollment in an out-of-town university and attendant campus residence during the school term.
(Footnote omitted).
Mr. Hedrick appealed this judgment, and we affirmed. Headrick, XXXX-XXXX at p. 9.
On September 23, 2005, Mr. Headrick filed, among other things, another rule to reduce child support.[2] In this rule, Mr. Headrick alleged that since the signing of the July 26, 2004 judgment ordering him to pay 70% of the children's undergraduate college costs, he "caused a scholarship in the amount of $1,000.00 to issue for the benefit of his major son, Joshua, to Richland Community College."[3] As a result of this scholarship, Richland Community College issued a refund check in the amount of $1,000.00 to Joshua Headrick and mailed it to the home of Ms. Powers.[4] Mr. Headrick further alleged "[s]ince [he] caused the scholarship to issue for the benefit of his son, he should be granted full credit against future . . . payments" for the amount of the scholarship refund. Lastly, Mr. Headrick alleged that Hurricane Katrina destroyed his place of employment, that he was terminated as an employee, that his income had been reduced, and that he was entitled to a reduction in his child support obligation.
In lieu of a hearing, the parties agreed to submit the matter on briefs and a joint stipulation of facts. The joint stipulation of facts provided, in pertinent part, as follows:
2. For the purpose of the Rule to Reduce Child Support[,] the gross monthly income of [Ms.] Powers for the time period beginning September 23, 2005 was and currently remains $3,642.72 per month;
3. For the purpose of the Rule to Reduce Child Support[,] the gross monthly income of [Mr.] Headrick for the time period beginning September 23, 2005 through the week ending November 19, 2005 ... [was] $3,211.50[;]
4. For the purpose of the [Rule] to Reduce Child Support[,] the gross monthly income of [Mr.] Headrick for the time period beginning November 20, 2005 is $2,129.00;
5. For the purposes [sic] of the [Rule] to Reduce Child Support[,] [Ms.] Powers pays health insurance for the three children in the amount of $228.00 per month;
6. Joshua Headrick received the benefit of a $1,000.00 scholarship for the year 2004-2005 and a second $1,000.00 scholarship for the year 2005-2006, both based upon Mr. Headrick's efforts;[5]
7. The $1,000.00 scholarship for 2004-2005 issued to Richland Community College was refunded to Josh[ua] Headrick by check dated September 3, 2004;
8. All of the $1,000.00 scholarship refund was used by Joshua Headrick to reimburse [Ms.] Powers for the purchase of a Dell computer without the knowledge of [Mr.] Headrick;
9. Joshua Headrick also received a tuition refund in the amount of $220.00 for the year 2004-2005;
10. The present home of [Mr.] Headrick sustained extensive flood damage as a result of Hurricane Katrina and he and his family have had to residence of [sic] a family in St. Louis[,] Missouri and have not paid rent;
11. Mr. Headrick and his family will return to a trailer provided by FEMA located at their home on December 23, 2005;
12. As coach of the University of New Orleans Women's Golf Team, [Mr.] Headrick has been forced to commute from Thibodaux[,] Louisiana[,] since the University of New Orleans has relocated the Women's Golf Team to that city;
13. The gross monthly income of [Mr.] Headrick[,] which includes unemployment compensation[,] is based upon the assumption that he will not have to pay back any unemployment compensation benefits received by him.
In written reasons for judgment issued on January 25, 2006, the trial court calculated Mr. Headrick's basic child support obligation to be $905.00 per month for the time period between September 23 and November 20, 2005, and $639.00 per month from November 20, 2005 forward. The trial court also determined that Mr. Headrick would be responsible for 47% of college expenses for Joshua and uncovered medical expenses for the time period between September 23 and November 19, 2005 and for 37% of those expenses thereafter. With regard to the scholarship funds or tuition refunds received by Joshua, the trial court ordered that such sums would be credited against the total amount of college expenses incurred, with each party paying their percentage share of the remaining amount. A written judgment in conformity with the trial court's ruling was signed on March 7, 2006, and it is from this judgment that Mr. Headrick has appealed.

II. ASSIGNMENT OF ERROR
On appeal, Mr. Headrick's sole assignment of error is that the trial court erred when it "denied [Mr.] Headrick's request to grant him full credit for the amount of any scholarship funds paid for the benefit of Joshua Headrick ... since these were funds generated by the actions of [Mr. Headrick] after his child support obligation had already been determined by the court."

III. LAW AND DISCUSSION
The facts of this case are not in dispute, as Mr. Headrick does not challenge the trial court's calculation with regard to the percentage share of college expenses he is obligated to pay. Rather, Mr. Headrick contends that he should be granted a full credit for the full amount of the scholarship funds against his percentage share of the college expenses (instead of a credit in proportion to his obligation to pay the expense), and that Ms. Powers should not share any financial benefit for the scholarship funds received by Joshua, since the scholarship funds were "generated" by his actions. The resolution of this issue turns on the interpretation of the July 26, 2004 consent judgment between the parties.
A "consent judgment" is, in effect, a bilateral contract between the parties, which gets its binding force from the consent the parties gave, rather than from adjudication by the courts. Richardson v. Richardson, 2002-2415, p. 4 (La. App. 1st Cir. 7/9/03), 859 So.2d 81, 84. Interpretation of a consent judgment, i.e. a contract between the parties, is a determination of the common intent of the parties. Richardson, 2002-2415 at p. 4, 859 So.2d at 84-85; see also La. C.C. art. 2045. Such intent is to be determined in accordance with the plain, ordinary, and popular sense of the language used, and by construing the entirety of the document on a practical, reasonable, and fair basis. Freeport-McMoran, Inc. v. Transcontinental Gas Pipe Line Corp., XXXX-XXXX, p. 7 (La. App. 1st Cir. 10/14/05), 924 So.2d 207, 212, writ denied, 2005-2358 (La. 3/31/06), 925 So.2d 1256.
The July 26, 2004 consent judgment was intended, in part to clarify the December 17, 1996 consent judgment, wherein the parties had stipulated that Mr. Headrick would pay child support "until the children graduated from college ... [and would] contribute proportionately to the children's educational needs." With regard to the payment of college expenses, the July 26, 2004 consent judgment provided as follows:
4. IT IF [sic] FURTHER ORDERED, ADJUDGED AND DECREED that [Mr.] Headrick shall pay 70% of the costs for the undergraduate college costs for the parties' children even though they will have reached the age of majority, [and] [Ms.] Powers will be responsible for the remaining 30%[.]
Reviewing this provision with the remaining provisions of the consent judgment, it is clear that Mr. Headrick and Ms. Powers agreed to pay for their children's undergraduate college expenses in proportion to their respective incomes.[6] The actual percentage share of the college expenses they agreed to pay was derived from a determination of their respective proportionate share of their combined income in accordance with the Louisiana child support guidelines and La. R.S. 9:315.2(C). This is further evidenced by the fact that the parties also agreed they would pay the same percentage share of the children's uncovered medical and dental expenses. See La. R.S. 9:315.5 and La. R.S. 9:315.8.
Nevertheless, Mr. Headrick contends that he should receive a full credit against his obligation (rather than a proportionate credit) for the scholarship funds received by Joshua Headrick. His entire argument in this regard is premised on Gray v. Gray, 37,884 (La. App. 2nd Cir. 12/12/03), 862 So.2d 1097.
In Gray, the parties had entered into a consent judgment that ordered Mr. Gray to "provide monies necessary for the college education of the minor children of the marriage, same to be an enforceable obligation contractually even though the children have reached the age of majority prior to the completion of their educational endeavors." Gray, 37,884 at pp. 1-2, 862 So.2d at 1098. When Ms. Gray sought to enforce this obligation, Mr. Gray refused, and Ms. Gray filed suit seeking a judgment declaring that the education provisions were enforceable, ordering Mr. Gray to pay such expenses, and requesting that Mr. Gray, be held in contempt of court for his failure to comply with the provisions. Gray, 37,884 at p 2, 862 So.2d at 1098. The court of appeal concluded that Mr. Gray should not be relieved of an obligation that he freely and voluntarily entered into absent evidence of a vice of consent, and absent such showing, Mr. Gray was bound to pay for the necessary college costs of the children even after they reached the age of majority. Gray, 37,884 at p. 4, 862 So.2d at 1099. The court of appeal then clarified what "necessary" college expenses could include, and noted that Mr. Gray's obligation under the consent judgment applied only to undergraduate studies and that Mr. Gray would be "entitled to credit for any scholarship, grant, or other program that pays or has paid for any of these [necessary] expenses." Gray, 37,884 at pp. 4-5, 862 So.2d at 1100.
Using the above language from Gray, Mr. Headrick reasons that he, too, should be given full credit for the total amount of any scholarship funds received by or for the benefit of Joshua since those funds were procured through his efforts. We disagree. In Gray, the appellate court properly noted that Mr. Gray should be given full credit for any scholarship, grant, or other program that has paid any of his children's undergraduate expenses because, under the terms of the consent judgment, Mr. Gray was responsible for the full amount of the necessary college expenses. In this case, Mr. Headrick is not responsible for the full amount of the college costs of the children, but is instead, responsible for a percentage share of the expense in proportion to his and Ms. Powers' combined incomes. Despite the fact that the scholarship funds were procured through the efforts of Mr. Headrick, the funds are for the benefit of Joshua Headricknot the parties. To the extent that there is a resulting financial benefit from Joshua's receipt of the scholarship funds (i.e. a lower sum of money that must actually be paid in order for him to attend college) it follows that this benefit should be shared by the parties in the same proportion as they are obligated to pay Joshua's college expenses.
The judgment of the trial court ordered that the scholarship funds received by Joshua Headrick be credited against his total college expenses (during the academic year in which he received the funds) and ordered that the remaining costs for his college expenses be proportionately shared by his parents according to their income. This result is consistent with the parties' intent to pay for their children's undergraduate college expenses in proportion to their respective incomes. Thus we find that the March 7, 2006 judgment of the trial court is correct and we hereby affirm that judgment.[7]

IV. CONCLUSION
For the above and foregoing reasons, we hereby affirm the March 7, 2006 judgment of the trial court. All costs of these proceedings are assessed to the defendant/appellant, James Headrick.
AFFIRMED.
NOTES
[1] At some point following the parties' divorce, Jayne Headrick remarried and moved with the children to Illinois; she now uses the name Jayne Powers.
[2] Also included in Mr. Headrick's rule to reduce child support were rules for joint custody and for fixed visitation privileges. Mr. Headrick subsequently agreed to dismiss these rules in a joint stipulation of facts filed into the record of these proceedings.
[3] Joshua was enrolled as a student at Richland Community College.
[4] The college also issued Joshua a second refund check in the amount of $220.00, which was mailed to Ms. Power's home.
[5] Both parties agree that the scholarship Joshua Headrick received was issued by a golf organization and based on Mr. Headrick's status as a golf professional.
[6] We note that judgment on appeal modifies the actual percentage share of this expense that each party is obligated to pay; however, neither party has challenged the modification of their percentage share in this appeal.
[7] When the appellate review of the interpretation of a contract is not premised upon any factual findings made at the trial level, but is instead, based upon an independent review and examination of the contract on its face, appellate review is simply whether the trial court was legally correct or incorrect. Freeport-McMoran, XXXX-XXXX, p. 7 (La. App. 1st Cir. 10/14/05), 924 So.2d 207, 212, writ denied, 2005-2358 (La. 3/31/06), 925 So.2d 1256.